

December 16, 2015

**City of Chicago**
**Rahm Emanuel, Mayor**

**Department of Law**

Stephen R. Patton
Corporation Counsel

Appeals
Suite 800
30 North LaSalle Street
Chicago, Illinois 60602-2580
(312) 744-7764
(312) 744-3588 (FAX)
(312) 744-7157 (TTY)

www.cityofchicago.org

VIA E-FILING

Gino J. Agnello
Clerk of the Court
United States Court of Appeals
  for the Seventh Circuit
219 South Dearborn Street
Chicago, IL  60604

Re:    Ezell v. City of Chicago, No. 14-3312 & 14-3322 (consol.),
        Letter pursuant to Fed. R. App. P. 28(j).

Dear Mr. Agnello:

      The City submits Horsley v. Trame, No. 14-2846 (7th Cir. 2015), as supplemental authority.  In Horsley, this court upheld an Illinois statute that requires an applicant for a Firearms Owner's Identification Card ("FOID card") between the ages of 18 and 21 to obtain the consent of the applicant's parent or guardian.  This court held that the requirement imposed a modest burden because an applicant may seek review from the Director of the Illinois State Police, who has the authority to approve a FOID card for 18- to 20-year-olds.  This court explained that the regulation did not impose "severe burdens," and instead "'impose[s] only modest burdens because [it does] leave open ample alternative channels.'"  Id. at 12 (citing Heller v. District of Columbia, 670 F.3d 1244, 1262 (D.C. Cir. 2011)).  This holding supports our argument, on pages 21-23 of the City's opening brief, and on pages 1-15 of the reply/response brief, that the M zoning of shooting ranges does not severely burden Second Amendment rights because it allows for ample locations for ranges in Chicago – in fact, more than 10% of areas zoned for commercial use.

      Turning to the means/end rationale for the requirement of parental consent, this court held that the regulation was substantially related to the State's public safety objectives because 18- to 20-year-olds contribute significantly to violent crime, and there is "strong" scientific evidence that "the brain does not cease to mature until the early 20s in those relevant parts that govern impulsivity, judgment, planning for the future, foresight of

1

consequences, and other characteristics that make people morally culpable." Id. at 14 (citations omitted). This holding supports the argument on pages 35-36 of the City's reply/response brief, relying on the same research to support Chicago's requirement that individuals must be at least 18, and therefore much closer to the biological age of maturity, before they are allowed into and permitted to engage in the dangerous activity of discharging firearms at a shooting range.

      Please provide copies of this letter to the panel (Judges Kanne, Rovner, and Sykes).

                            Sincerely,

                            /s Suzanne M. Loose
                            Suzanne M. Loose
                            Senior Counsel
                            Counsel for Defendant-Appellant/
                            Cross-Appellee
                            (312) 744-8519

**CERTIFICATE OF COMPLIANCE**

I certify that the above letter complies with the word limitation provided in Fed. R. App. P. 28(j). The body of this letter, beginning with "The City Submits" and ending with "Sincerely" contains 340 words as recorded by the word count of the Microsoft Word wordprocessing system used to prepare the letter.

**CERTIFICATE OF SERVICE**

The foregoing Letter Pursuant to Fed. R. App. P. 28(j) has been electronically filed on December 16, 2015. I certify that I have caused the foregoing letter to be served on all counsel of record via CM/ECF electronic notice on December 16, 2015.

s/ Suzanne M. Loose
Suzanne M. Loose, Attorney

In the

# United States Court of Appeals

### For the Seventh Circuit

No. 14-2846

TEMPEST HORSLEY,

*Plaintiff-Appellant*,

v.

JESSICA TRAME, in her official capacity as Chief of the Illinois State Police Firearms Services Bureau,

*Defendant-Appellee*.

Appeal from the United States District Court for the
Southern District of Illinois.
No. 13 CV 00321 — **Nancy J. Rosenstengel**, *Judge*.

ARGUED APRIL 17, 2015 — DECIDED DECEMBER 14, 2015

Before POSNER and WILLIAMS, *Circuit Judges,* and WOOD, *District Judge*.[1]

WILLIAMS, *Circuit Judge*. Tempest Horsley's application to possess an Illinois Firearm Owner's Identification Card, com-

---

[1] The Honorable Andrea R. Wood of the Northern District of Illinois, sitting by designation.

monly known as a "FOID card," was returned to her as incomplete because she was over 18 but not yet 21 and her application did not contain a parent or guardian signature. Although she could have under Illinois law, she did not seek further review from the Director of the Illinois State Police. We disagree with Horsley that the Illinois statutory scheme violates her rights under the Second Amendment. Illinois does not impose a categorical ban on firearm possession for 18-to-20-year-olds whose parents do not consent. Rather, when an applicant cannot obtain a parent or guardian signature, he or she may appeal to the Director for a FOID card, and the Director will make a determination. We conclude that this process for 18-to-20-year-olds is not unconstitutional, so we affirm the decision of the district court.

## I. BACKGROUND

A few months after Tempest Horsley turned 18, she mailed in an application for an Illinois FOID card along with the requisite check for $10. Horsley's application was returned to her. The accompanying cover letter informed her that the application was incomplete because she was not yet 21 years old and her application did not contain the signature of a parent or guardian. Horsley did not appeal or seek further review from the Director of the Illinois State Police.

Instead, Horsley filed this lawsuit against Jessica Trame, the Chief of the Illinois State Police Firearms Services Bureau, under 42 U.S.C. § 1983. Horsley asserted in her complaint that she seeks to possess a double-barrel shotgun or other firearm for self-defense inside her home and that her parents will not sign her application for a FOID card. Horsley contends that the Illinois parent or guardian signature provision for FOID card applicants who are at least 18 but less than 21 years old

violates the Second Amendment to the United States Constitution. Her complaint sought an order directing that her application be processed without a parent or guardian signature and an injunction preventing the Illinois State Police from rejecting an application for a FOID card to a person at least 18 years of age on the basis of a lack of parent or guardian signature.

Both parties filed motions for summary judgment, and they stipulated that the legal issue to be resolved by the court was whether the age provision in Illinois's FOID Card Act is constitutional. After a hearing, the district court granted Trame's motion for summary judgment and denied Horsley's motion. Horsley appeals.

## II. ANALYSIS

In Illinois, most persons may not lawfully possess or acquire a firearm without a FOID card issued by the Illinois Department of State Police. 430 ILCS 65/2(a)(1). An applicant for a FOID card must complete a form prepared by that department. 430 ILCS 65/4(a)(1). The applicant must submit evidence that, among other things, the applicant has not been convicted of a felony, has not been adjudicated as a person with a mental disability, and is not addicted to narcotics. 430 ILCS 65/4(a)(2)(ii), (iii), (xv). Another provision in the Illinois FOID Card Act—the one relevant here—states that if under 21 years of age, the applicant must submit evidence that

> he or she has the written consent of his or her parent or legal guardian to possess and acquire firearms and firearm ammunition … provided, however, that such parent or guardian is not an individual prohibited from having a Firearm Owner's Identification Card … .

430 ILCS 65/4(a)(2)(i). The Department of State Police must approve or deny an application within 30 days of receipt. 430 ILCS 65/5.

Horsley's application was rejected because she was under 21 years old and her application did not contain the written consent of a parent or guardian. *See* 430 ILCS 65/8(b). With exceptions not relevant here, when an application for a FOID card is denied, the aggrieved party may appeal to the Director of State Police for a hearing. 430 ILCS 65/10(a). The Director may grant relief to a person who lacks a parent or guardian signature if the applicant establishes to the Director's satisfaction that the applicant has not been convicted of a forcible felony within a certain number of years, the applicant will not be likely to act in a manner dangerous to public safety, and granting relief would not be contrary to the public interest or to federal law. 430 ILCS 65/10(c); *O'Neill v. Director of Ill. Dep't of State Police*, 28 N.E.3d 1020, 1024 (Ill. App. Ct. 2015). A decision from the Director denying an appeal is subject to judicial review under Illinois's Administrative Review Law, 735 ILCS 5/3-101 *et seq.* 430 ILCS 65/11(a). Horsley did not seek any relief from the Director.

We review the district court's grant of summary judgment in Trame's favor de novo. *Spierer v. Rossman*, 798 F.3d 502, 507 (7th Cir. 2015). In doing so, we use the familiar standard that summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). There are no disputes of material fact in this case, and the only questions are ones of law.

Trame first argues that Horsley's case is not ripe for our review because Horsley did not ask the Director of State Police to grant her a FOID card after her application was returned to her. "Ripeness is a justiciability doctrine designed 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.'" *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 806 (2003) (citation omitted).

Although she did not appeal to the Director, it is clear that the Department of State Police will not process Horsley's application in the same way that it will process applications that contain parent or guardian signatures. Applications with such signatures can only be denied by the Department of State Police on certain statutorily enumerated grounds. 430 ILCS 65/8. Someone in Horsley's position, however, must pursue a different procedure of review from the Director. *See* 430 ILCS 65/10(a), (c).

In addition, to the extent that Trame is arguing that we should not review this case on the basis that Horsley failed to exhaust her administrative remedies, we disagree. An "exhaustion requirement generally refers to administrative and judicial procedures by which an injured party may seek review of an adverse decision and obtain a remedy if the decision is found to be unlawful or otherwise inappropriate." *Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 193 (1985). There is no general duty to exhaust state judicial or administrative remedies before pursuing an action under 42 U.S.C. § 1983, however. *Patsy v. Bd. of Regents of State of*

*Fla.*, 457 U.S. 496, 516 (1982) ("exhaustion of state administrative remedies should not be required as a prerequisite to bringing an action pursuant to § 1983"); *see also Felder v. Casey*, 487 U.S. 131, 146-47 (1988).

Trame argues that the rule the Supreme Court pronounced in *Patsy* does not control here, and she points to our decision in *Daniels v. Area Plan Commission of Allen County*, 306 F.3d 445 (7th Cir. 2002) for the proposition that exhaustion of state court remedies is sometimes a prerequisite to a § 1983 claim. But *Daniels* is a Takings Clause case. *Id.* at 454. Suits alleging Takings Clause claims are one of the few exceptions the Supreme Court has recognized to the general rule it announced in *Patsy* that § 1983 suits do not require exhaustion of remedies. *See Peters v. Village of Clifton*, 498 F.3d 727, 730 n.4 (7th Cir. 2007). The exhaustion requirement in Takings Clause cases "stems from the Fifth Amendment's proviso that only takings without 'just compensation' infringe that Amendment." *Suitum v. Tahoe Reg'l Planning Agency*, 520 U.S. 725, 734 (1997); *see also Williamson Cnty.*, 473 U.S. at 186-87. And the exhaustion requirement in the other exception, prisoner suits alleging constitutional deprivations while incarcerated, comes straight from a statute, 42 U.S.C. § 1997e. *See Patsy*, 457 U.S. at 508. Neither exception is present here.

We now turn to the merits. The Second Amendment of the United States Constitution provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. The Supreme Court has ruled that the Second Amendment includes an individual right to keep and bear arms in the home for the purpose of self-defense. *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008). This Second

Amendment right applies to the states through its incorporation in the Due Process Clause of the Fourteenth Amendment. *McDonald v. City of Chicago*, 561 U.S. 742, 791 (2010). The Supreme Court has made clear that "[l]ike most rights, the right secured by the Second Amendment is not unlimited." *Heller*, 554 U.S. at 626. The question in our case is whether the Illinois statutory scheme that promulgates a different procedure for 18-to-20-year-olds to possess a firearm, but does not ban them from doing so, violates the Second Amendment.

Our court's review of a Second Amendment claim typically begins with the threshold question of whether "the restricted activity [is] protected by the Second Amendment in the first place." *United States v. Ezell*, 651 F.3d 684, 701 (7th Cir. 2011). If the challenged law regulates activity that falls outside the scope of the Second Amendment at the historically relevant time, then the regulated activity is not protected, and the analysis stops there. *Id.* at 702-03.

Trame argues that the challenged statute does not regulate activity protected by the Second Amendment because, she contends, a right to firearm possession by a person under 21 is not within the amendment's scope. *Heller* tells us that the Second Amendment codified a "*pre-existing* right," and it analyzed the amendment's historical background and understanding at the time of the founding. *See* 554 U.S. at 592 (emphasis in original); *id.* at *e.g.*, 592-94. Trame argues that the Second Amendment was not originally understood to include minors, and that minors during the founding era were understood to be persons under the age of 21. From there she reasons that persons who are presently under the age of 21 do not have a Second Amendment right to possess a firearm.

The Constitution does not set forth an age of majority. During the founding era, persons under 21 were considered minors or "infants." *See Nat'l Rifle Ass'n v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 700 F.3d 185, 202 (5th Cir. 2012). According to Blackstone, for example, "full age in male or female is twenty-one years," and "till that time is an infant, and so stiled in law." 1 Commentaries on the Laws of England 463 (St. George Tucker ed. 1803); *see Heller*, 554 U.S. at 593-94 (stating that Blackstone "'constituted the preeminent authority on English law for the founding generation'") (citation omitted). The age of majority was 21 until the 1970s. *Nat'l Rifle Ass'n*, 700 F.3d at 202. So most right-to-bear-arms laws were passed while 18-to-20-year-olds were minors. And Trame points to authority for the proposition that states could bar the sale of firearms to minors, such as Thomas Cooley's treatise that *Heller* called "massively popular" in which Cooley writes that the states "may prohibit the sale of arms to minors" pursuant to their police power. Thomas M. Cooley, *Treatise on Constitutional Limitations* 740 n.4 (5th ed. 1883); *Heller*, 554 U.S. at 616.

The Fifth Circuit considered historical and other evidence and concluded that a prohibition on carrying a handgun in public by 18-to-20-year-olds likely falls outside the Second Amendment's protection. *Nat'l Rifle Ass'n*, 700 F.3d at 204 ("Modern restrictions on the ability of persons under 21 to purchase handguns—and the ability of persons under 18 to possess handguns—seem, to us, to be firmly historically rooted"). The Supreme Court of Illinois made that conclusion even more definitively in two recent decisions challenging convictions for aggravated unlawful use of a weapon (AUUW) by defendants under 21. *See People v. Mosley*, 33

N.E.3d 137 (Ill. 2015) (concluding that Illinois AUUW convictions for carrying a handgun while under 21 years old outside the home did not violate Second Amendment because challenged provisions did not regulate conduct within scope of Second Amendment); *In re the Interest of Jordan G.*, 33 N.E.3d 162, 168-69 (Ill. 2015). And the First Circuit suggested that the right to keep arms in the founding period did not extend to juveniles, though that court was upholding the constitutionality of 18 U.S.C. § 922(x), which prohibits juveniles—persons under 18, not 18-to-20-year-olds as here—from possessing handguns (with certain exceptions). *United States v. Rene E.*, 583 F.3d 8, 16 (1st Cir. 2009).

Horsley, on the other hand, maintains that firearm possession by 18-to-20-year-olds falls within the scope of the Second Amendment. She emphasizes that persons over 18 can vote and serve in the military, get married without parental consent, and own land. Even though the age of majority was for many years 21, it is now 18, and so she argues that present-day 18-year-olds cannot be restricted from possessing firearms based on age alone. She points to historical evidence that she contends favors her position as well. The First Militia Act enacted by the United States Congress in 1792, for example, included 18-year-old men in the scope of those eligible for the militia. Because a minor could be a member of the militia and be armed, she reasons that the Second Amendment gives these persons a right to bear arms.

We need not decide today whether 18-, 19-, and 20-year-olds are within the scope of the Second Amendment. *Cf. Nat'l Rifle Ass'n*, 700 F.3d 185 at 204-05 (also declining to resolve issue). Even if they are, our next step would be to turn to means-ends scrutiny of the regulation. *Ezell*, 651 F.3d at 703.

In this analysis we "evaluate the regulatory means the government has chosen and the public-benefits end it seeks to achieve." *Id.* The level of scrutiny we apply "will depend on how close the law comes to the core of the Second Amendment right and the severity of the law's burden on the right." *Id.* "[L]aws restricting activity lying closer to the margins of the Second Amendment right, laws that merely regulate rather than restrict, and modest burdens on the right may be more easily justified." *Id.* at 708.

The Supreme Court has said that the "need for defense of self, family, and property is most acute" in the home. *Heller*, 554 U.S. at 628. As Horsley emphasizes, the Illinois statute here implicates self-defense in the home. It also implicates self-defense in the home using handguns, the weapon at issue in *Heller*. That said, the Supreme Court explained in *Heller* that not all regulations of firearm possession, even of handguns in the home, are invalid. The Court made clear, for example, that nothing in its opinion "should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill." *Id.* at 626-27; *see also Moore v. Madigan*, 702 F.3d 933, 940-41 (7th Cir. 2012) (listing "the usual prohibitions of gun ownership by children, felons, illegal aliens, lunatics, and in sensitive places like public schools, the propriety of which was not questioned in *Heller*").

Significantly, although Horsley's arguments treat the challenged statute as a categorical ban on firearm possession, the FOID Card Act does not in fact ban persons under 21 from having firearms without parent or guardian consent.[2] Having

---

[2] We have affirmed categorical bans on firearm possession in other instances. *See United States v. Williams*, 616 F.3d 685, 692 (7th Cir. 2010) (affirming categorical ban on possession of firearms by felons); *United*

a parent or guardian signature may speed up the process, but it is not a prerequisite to obtaining a FOID card in Illinois. Rather, a person for whom a parent's signature is not available can appeal to the Director of the Illinois State Police. Upon a sufficient showing regarding the applicant's criminal record, lack of dangerousness, and the public interest, the Director may issue a card. 430 ILCS 65/10(c). And if the Director were to deny the application, the denial is subject to judicial review. 430 ILCS 65/11(a).

So the lack of a parent signature does not bar Horsley from possessing a firearm, despite her arguments to the contrary.[3] Nor does it impose a bar on gun possession on an 18-to-20-year-old whose parents have passed away or are disqualified from owning guns. The absence of a blanket ban makes the Illinois FOID Card Act much different from the blanket ban on firearm possession present in *Heller*. That there is not a categorical ban here also distinguishes this case from *Planned Parenthood v. Danforth*, 428 U.S. 52 (1976), to which Horsley points. There the Supreme Court struck down a "blanket provision" requiring the consent of a parent or person *in loco parentis* before an unmarried minor could have an abortion during her first 12 weeks of pregnancy unless necessary to preserve the mother's life. *Id.* at 74.

---

*States v. Yancey*, 621 F.3d 681, 683 (7th Cir. 2010) (affirming ban on possession of firearms by unlawful users of controlled substances); *United States v. Skoien*, 614 F.3d 638, 640 (7th Cir. 2010) (en banc) (affirming categorical ban on possession of firearms by domestic violence misdemeanants).

[3] Horsley did not address in her brief the opportunity for appeal to the Director, despite the district court's emphasis on the statutory provision providing the ability to do so, and she did not file a reply brief on appeal.

The absence of a parent or guardian signature is not a "veto" on the ability of a person between 18 and 21 to get a FOID card in Illinois. And the Illinois scheme is not a regulatory means that imposes "'severe burdens'" because it "'[does not] leave open ample alternative channels'"; rather it is a restriction that "'impose[s] only modest burdens (because [it does] leave open ample alternative channels'." *Heller v. District of Columbia*, 670 F.3d 1244, 1262 (D.C. Cir. 2011) (quoting Volokh, *Implementing the Right to Keep and Bear Arms for Self-Defense: An Analytical Framework and a Research Agenda*, 56 UCLA L. Rev. 1443 (2009)).

In addition to reviewing Illinois's chosen regulatory means, we also consider the public-benefits end it seeks to achieve. *Ezell*, 651 F.3d at 703. It is clear that Illinois has an important and compelling interest in its citizens' safety. *See Schall v. Martin*, 467 U.S. 253, 264 (1984) ("The 'legitimate and compelling state interest' in protecting the community from crime cannot be doubted."). Illinois's interest in protecting the public from firearms violence underlies the challenged statute. The Illinois FOID Card Act also reflects an interest in ensuring sufficient compensation for injuries caused by an applicant's firearms use, as parents or guardians who give consent on a FOID card application can be civilly liable for damages resulting from the applicant's firearms use. *See* 430 ILCS 65/4.

The Illinois statute is substantially related to the achievement of the state's interests. The goal of protecting public safety is supported by studies and data regarding persons under 21 and violent and gun crimes. For example, before federal legislation targeting youth firearm possession and purchase was passed, the United States Departments of Justice

and Treasury analyzed gun crime by persons over 18 and under 21. It reported that in 1997, 18-, 19-, and 20-year-olds ranked first, second, and third in the number of gun homicides committed in the United States. U.S. Dep't of the Treasury & U.S. Dep't of Justice, *Gun Crime in the Age Group 18-20*, at 2 (June 1999). In all gun homicides where an offender was identified, 24% were committed by persons in that age group. *Id.* The report also found that among murderers, 18-to-20-year-olds were more likely to use firearms than persons 21 and over. *Id.*

More recent data reflects similar trends. An FBI analysis of crime in 2014 reflects that 18-to-20-year-olds were responsible for more than 15.8% of all charges issued for murder and nonnegligent manslaughter. When forcible rape, robbery, and aggravated assault are added, 18-to-20-year-olds account for about 11% of charges brought for violent crime. U.S. Dep't of Justice & Fed. Bureau of Investigation, *Crime in the United States 2014*, Table 38: Arrests by Age, https://www.fbi.gov/about-us/cjis/ucr/crime-in-the-u.s./2014/crime-in-the-u.s.-2014/tables/table-38. That is true even though that age group represented only about 4.1% of the country's total population and 5.4% of the population over the age of 14. *See Nat'l Rifle Ass'n*, 700 F.3d at 210 & n.20. Congressional investigations around the time that Illinois passed the challenged statute in 1967 reflect similar patterns. Those investigations concluded that minors under the age of 21 accounted for 64% of arrests for "serious crimes" in the United States, S. Rep. 90-1097, at 77 (1968), including 21% of the arrests for murder, 114 Cong. Rec. 12279, 12309 (1968) (statement of Sen. Thomas J. Dodd). These crime figures reflect im-

portant benefits to the public interest in limiting firearm possession by persons in the age group that is the subject of the challenged statute.

Trame also points to scholarly research on development through early adulthood that supports a conclusion that the Illinois FOID card application procedure for persons under 21 fits the state's compelling interest in public safety. Dr. Ruben C. Gur, a neuropsychologist and Director of the Brain Behavior Laboratory at the University of Pennsylvania, for example, explains: "The evidence now is strong that the brain does not cease to mature until the early 20s in those relevant parts that govern impulsivity, judgment, planning for the future, foresight of consequences, and other characteristics that make people morally culpable." Declaration of Ruben C. Gur, Ph.D., http://www.americanbar.org/content/dam/aba/publishing/criminal_justice_section_newsletter/crimjust_juvjus_Gur_affidavit.authcheckdam.pdf; *see also, e.g.,* Adam Ortiz, *Adolescence, Brain Development and Legal Culpability*, American Bar Association, Juvenile Justice Center (2004) (collecting studies). We also note that Illinois is not alone in directing additional measures for persons under 21. Federal law prohibits federally licensed dealers from selling handguns to persons under 21. 18 U.S.C. § 922(b)(1), (c)(1). Twelve other states in addition to Illinois have age-based restrictions on firearm possession or purchase by those under 21.[4]

---

[4] *See* Cal. Penal Code § 27505(a); Conn. Gen. Stat. § 29-36f; Del. Code. Ann. tit. 24, § 903; D.C. Code Ann. § 7-2502.03; Haw. Rev. Stat. Ann. § 134-2; Iowa Code § 724.22; Md. Code. Ann., Pub. Safety § 5-133(d); Mass. Gen. Laws ch. 140, § 131; N.J. Stat. Ann. § 2C:58-6.1; N.Y. Penal Law § 400.00; Ohio Rev. Code Ann. § 2923.21; R.I. Gen. Laws §§ 11-47-30, 11-47-35.

We conclude that Illinois has shown a sufficient means-end relationship between the challenged statute and an important government interest. Illinois's decision to use parents as a first check on firearm possession by persons under 21 is reasonable. The parent or guardian signature provision provides for an individualized assessment of the applicant's fitness for possession of a firearm by a person likely to be in the best position to make such an evaluation. That signature also subjects the parent to liability for harm caused by firearm ownership. The legislature could reasonably conclude that many persons under 21 would not have the financial ability to compensate a person injured in a firearms incident, and the signature provision in the Illinois statute provides a means for an additional source of income in that event. If no parent or guardian is willing or able to sign the application, the Illinois statute provides that another person can make the individualized assessment—the Director of State Police. The challenged provisions in the FOID Card Act are substantially related to the state's important interests, and we do not find the law unconstitutional. *See United States v. Decastro*, 682 F.3d 160, 168 (2d Cir. 2012) (stating that a "law that regulates the availability of firearms is not a substantial burden on the right to keep and bear arms if adequate alternatives remain for law-abiding citizens to acquire a firearm for self-defense.").

### III. CONCLUSION

The judgment of the district court is AFFIRMED.